**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal No. 05-126 (MJD/JGL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **THOMAS VIRGIL GLARNER (01) and DARREL NEWTON BARNARD (02),** | |
| Defendants. | |

APPEARANCES

Chris Wilton, Esq., Assistant United States Attorney, on behalf of Plaintiff United States of America

Gary Bryant Wolf, Esq., on behalf of Defendant Thomas Virgil Glarner (01)

Kassius Benson, Esq., on behalf of Defendant Darrel Newton Barnard (02)

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge on June 15, 2005 on Motions by Defendants. The matter is scheduled to be tried before the Honorable Michael J. Davis beginning on August 1, 2005. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.1.

**I.     INTRODUCTION**

A Complaint was filed on March 24, 2005 against Defendants Thomas Virgil Glarner (01) and Darrel Newton Barnard (02), and bench warrants for each were issued soon thereafter.  An Indictment followed on April 19, 2005, charging both Defendants with Conspiracy to Distribute and Possess with Intent to Distribute in excess of five hundred grams of a mixture and substance containing a detectable amount of methamphetamine (Count 1), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  The Indictment also charged Defendants with each aiding and abetting the other in the Distribution of Methamphetamine (Count 2), in contravention of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

A pretrial motions hearing was held on June 15, 2005 before this Court.  Defendants were present and each represented by separate counsel.  One exhibit was admitted into evidence at the hearing, <u>Government's Exhibit 1</u>: an application, supporting affidavit, and search warrant for a residence and outbuildings in Lino Lakes, Minnesota, and for the person of Defendant Glarner.  Four witness testified before the Court: New Hope Police Officer Douglas Brunner, Coon Rapids Police Officer Michael Plankers, Washington County Deputy Sheriff Keith Anderson, and Defendant Glarner.

Defendants requested permission to file post-hearing memoranda, as did the Government. Defendants' additional memoranda were due Wednesday, June 22, and the Government's on Wednesday, June 29. The Government's later request for a short extension has been granted. This Report and Recommendation addresses Defendants' dispositive Motions, while all non-dispositive Motions are addressed in the accompanying Order.

## II.   DISCUSSION

Defendant Barnard filed a Motion to Suppress Tangible Evidence and Statements, as well as a separate Motion to Suppress Evidence. Defendant Glarner also filed a Motion to Suppress Evidence. Defendant Glarner seeks to suppress evidence seized from his home, arguing that the search warrant for his residence lacked probable cause and that the warrant was executed illegally. Defendant Barnard also asserts that the search warrant was executed illegally. In addition, Barnard contends that evidence seized from his person and evidence seized from a white pickup truck parked outside the residence should be suppressed. Neither Defendant challenges any specific statements made by him.

### A.   **Probable Cause for the Search Warrant**

Defendant Glarner alleges that the underlying search warrant lacked probable cause. A warrant must be supported by probable cause to

conduct a search or to seize evidence of a crime.  U.S. Const. amend IV.  Facts in a supporting affidavit must provide the issuing judge with a "substantial basis" to believe that a "fair probability" exists of finding evidence of crime.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983).  When a judge relies solely on an affidavit to issue a warrant, the judge may consider only information within the "four corners" of the affidavit.  United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982).  A supporting affidavit must show a "fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  Moreover, probable cause must be based on a belief that the evidence presently exists at the location, rather than having existed there at some earlier point in time.  United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981).  Courts reviewing a decision to issue a search warrant give great deference to the decision to issue the warrant and "due weight to inferences drawn" by issuing judges and local law enforcement.  Ornelas v. United States, 517 U.S. 690, 699 (1996).

At the hearing, Officer Plankers testified that on March 23, 2005, he applied for and received a warrant to search the person of Defendant Glarner and his residential address in Lino Lakes, Minnesota.  (Gov't Ex. 1.)  Officer Plankers's supporting affidavit describes a controlled purchase of methamphetamine crystals from Defendant Glarner by a cooperating

individual ("CI") at Glarner's residence within 72-hours of the application for warrant. (Gov't Ex. 1 at 2.) The CI was equipped with an audio transmitting device, allowing detectives to hear the narcotics transaction as it took place inside Glarner's home. (Id.) The warrant was executed the day it was signed, at 5:40 p.m. (Id. at 6.)

The extent of Defendant Glarner's argument that the search warrant at issue was not supported by probable cause is that the application contained "general, vague and stale averments." (Def. Glarner's Mem. Supp. Mot. Suppress at 9.) On the contrary, as described above, the application includes ample and timely information to support more than a fair probability that methamphetamine would be found at the residence and on Glarner. Gates, 462 U.S. at 238; Button, 653 F.2d at 324. Hence, even aside from Leon good faith considerations, the Court recommends that Glarner's Motion to Suppress be denied in this respect. See United States v. Leon, 468 U.S. 897, 922-23 (1984).

### B.    Execution of the Search Warrant at the Residence

Each Defendant contends that evidence seized from the Lino Lakes residence should be suppressed because the search warrant was executed illegally. The warrant application asserted that neither a nighttime search nor unannounced entry were necessary, and the warrant authorized

entry of the residence with announcement, during the daytime.  (Gov't Ex. 1 at 3.)  Defendants contend that officers unlawfully failed to knock and announce  prior to entry, and rely on the testimony of Defendant Glarner.

Pursuant to 18 U.S.C. § 3109, officers may force entry into a house to execute a search warrant after providing notice of their authority and purpose and having been refused admittance.  However, where officers knocked and announced their presence and forcibly entered after a reasonable suspicion of exigency had ripened, their entry satisfies § 3109 as well as the Fourth Amendment, even without an explicit refusal of admittance. United States v. Banks, 540 U.S. 31, 40 (2003).  Under the Fourth Amendment, a court judges the reasonableness of the waiting time from the perspective of a reasonable officer on the scene.  Id. at 39 (quotation omitted). In evaluating the reasonableness of waiting time, courts have explicitly taken into account the risk of disposal of narcotics evidence.  Id. at 38 (citing, e.g., United States v. Goodson, 165 F.3d 610, 612, 614 (8th Cir. 1999), finding a twenty-second wait after a loud announcement at a one-story ranch house reasonable).  Other significant circumstances for a court to consider include whether the police arrived during a time "when anyone inside would probably have been up and around," and the sufficiency of the time elapsed "for getting to the bathroom or the kitchen to start flushing [drugs] down the drain."  Id. at

40. In <u>Banks</u>, the Supreme Court held that "when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter."  <u>Id.</u>  Hence, once reasonable suspicion of an "exigency ha[s] matured," officers are "not bound to learn anything more or wait any longer before going in."  <u>Id.</u>

In the present case, the Court is faced with inconsistent and conflicting testimony as to whether the officers who executed the search warrant in fact knocked and announced their presence before entering Glarner's home.  Officer Plankers, a thirteen-year police veteran testified that he has made entry in the execution of hundreds of search warrants.  (Hrg. Tr. at 28, 32.)  He averred that after receiving the warrant at issue, he and other officers gathered for a briefing regarding entry strategies.  (<u>Id.</u> at 30.)  Approximately fifteen officers were involved in the execution.  According to Officer Plankers, at the time of execution, he was the third or fourth officer in line at the front door to the house, approximately four feet from the door.  (<u>Id.</u> at 30, 35, 42, 46.)  He testified that the first officer knocked and loudly announced "police, search warrant," a number of times.  (<u>Id.</u> at 30, 31, 35.)  Officer Plankers averred that the announcing officer did not scream, but was "loud enough that somebody that was inside would hear at least as the door

-7-

was being knocked on," and that "if they were approaching, they're going to hear a voice outside, clearly enough." (Id. at 31.)  The officers were dressed in tactical upper body vests that denoted "police" on the front, with badges hung over their vests in view. (Id.)

Officer Plankers testified that after "about fifteen, ten to fifteen seconds went by," he observed a male through the window on the front door of the split level duplex. (Id. at 31, 35, 47.)  The male reportedly approached the top of the stairs, stopped, appear to look down toward the entryway, and then walked toward the upper living room area, away from the door. (Id. at 31, 35.)  The male was later identified as Defendant Barnard. (Id. at 32.)  When Officer Plankers viewed the behavior of the man inside, he determined that the team was "comprised" and yelled, " make the entry, open the door." (Id. at 32, 33.)  Officer Plankers testified that he ordered the team to make entry because he was unsure of whom the man was, and feared the "potential for him to go get a weapon and / or dispose of any evidence" in the home. (Id. at 33.)  Both the outer screen door and inner door were unlocked and the team entered the home without damage, securing four persons inside before conducting their search. (Id. at 32, 34.)  Officer Plankers then set about inventorying the evidence found by all officers involved, as he was custodian. (Id.)  He averred that he has specific recollection of the events. (Id. at 46.)

-8-

Officer Plankers's report of the incident omits mention of the team's entry into the home to execute the warrant. (Id. at 39.) He also confirmed that other officers's reports omit the same. (Id. at 40-42.) The officer explained that he includes more detail regarding entry on an unannounced warrant, or where officers use a ram to forcibly gain entry. (Id. at 46-47.) He also testified that a standard amount of time to wait on a knock-and-announce warrant is fifteen to twenty seconds. (Id. at 46.)

Defendant Glarner testified that he was in the upstairs master bedroom of his home immediately before officers entered his residence. (Id. at 64.) The bedroom is at the far end of the hallway, on the same upper level as the living room, which is up five steps from the entryway. (Id. at 65.) He then walked down the hallway, toward the living room and stairs to the entryway, when he "heard the door hit" and heard people coming up the stairs. (Id. at 66.) Glarner averred that as he saw officers reach the top of the stairs, he observed Defendant Barnard rise up from the couch in the living room. (Id. at 66, 67.) Defendant Glarner testified that he did not hear the police knock or announce their presence, and claimed that if a person knocked on the door of his house, he would be able to hear it from the bedroom. (Id. at 65-66, 67.) He also stated that neither the television nor stereo were on at the time, and asserted that Officer Plankers was not one of the first four officers he saw

-9-

enter the home.  (Id. at 68, 69, 76.)

However, on cross examination Glarner admitted that he is a methamphetamine user, and was under the influence of that drug at the time the search warrant was executed.  (Id. at 71-72.)  Specifically, Defendant Glarner had smoked a quarter gram or less of meth at approximately 9:00 a.m. on March 23, which he referred to as "a lot for me."  (Id. at 72, 75.)  Moreover, after confirming that methamphetamine can affect a person for days, Glarner admitted that he had smoked the same large amount of meth the day before the search warrant was executed.  (Id. at 72-73.)  Defendant also stated that when the warrant was executed, the effects of the drug had worn off.  (Id. at 77.)  Defendant Glarner additionally testified that he could not remember whether he had smoked meth two days prior to the day at issue, stating that "I guess my memory's not that great for the three days before" March 23.  (Id. at 73.)  Glarner then admitted that he sold two ounces of methamphetamine on March 23.  (Id. at 73-74.)

When asked how the drug affects him, Glarner explained that methamphetamine "slow[s] things down a little bit" and makes him "not all that concerned with things sometimes."  (Id. at 72.)  However, he later testified that smoking methamphetamine increases his ability to hear because "it'll heighten your awareness of things," and will "tweaks things up" by increasing

sensitivity.  (Id. at 77, 78.)  Defendant also stated that he has never had any hearing problems.  (Id. at 77.)

Relying in part the lack of entry information in the police reports in this matter, Defendants assert that Officer Plankers provided false testimony and urge this Court to find the testimony of Defendant Glarner more credible than that of the officer.  In fact, Defendant Glarner audaciously challenges this Court to not "blindly accept the testimony of cops even where it would be foolhardy to accept it."  (Def. Glarner's Mem. Supp. Mot. Suppress at 15.)

Conversely, the Court weighs more favorably testimony regarding the particulars of an incident from a presumably sober police officer than any person who admits he was under the heavy influence of a hallucinogenic drug at the time in question.  The Court finds that the totality of the circumstances reveals a reasonable suspicion of an exigent circumstance that justified the officers' shortened waiting period.  See Banks, 540 U.S. at 38-40.  Given the exigencies created by Defendant Barnard's observed behavior – both the potential threat to officer safety and the potential destruction of narcotics evidence – the police in this situation were reasonable to wait only ten to fifteen seconds after beginning to knock and announce before they entered the home to execute their warrant.  See id.  Wholly aside from the exigency,

moreover, this Court is not prepared to find that a wait of ten to fifteen seconds is so short as to be presumptively unreasonable, particularly where no property damage is involved.  See id.  Accordingly, neither Defendant's[1] Motion to Suppress should be granted on these grounds.[2]

### C. Search of Barnard's Person

Defendant Barnard also challenges the search of his person as being outside the scope of the search warrant.  At the hearing, Officer Brunner, a seven-year police veteran, testified about information that he received in late 2004 or early 2005 from two confidential sources ("CS") regarding Defendants Glarner and Barnard.  (Hrg. Tr. at 3-4.)  The CSs asserted that Barnard was in the area, had been seen with Glarner, had

---

[1] The Court assumes arguendo that Defendant Barnard has standing to challenge the search of Defendant Glarner's home, as there was no evidence submitted as to whether Barnard was an overnight or long-term guest of Glarner's.  See Minnesota v. Olson, 495 U.S. 91, 95-96 (1990).

[2] Further, even if the knock and announce requirements were violated in this case, the evidence recovered pursuant to the search warrant would be protected from suppression by the Leon good faith exception.  See Leon, 468 U.S. at 922-23.  There is no evidence that the affidavit contained deliberately or recklessly false information.  See id. at 923 (citing Franks v. Delaware, 438 U.S. 154 (1978)).  There is no evidence that the issuing judge failed to act in a neutral or detached manner.  See id. (citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)).  As discussed above, the affidavit was not so lacking in probable cause that reliance on it by the officers was entirely unreasonable.  See id. (citations omitted).  Finally, the warrant was not so facially deficient that the officers unreasonably presumed it to be valid.  See id.

brought a large quantity of methamphetamine from California to the Twin Cities, and was driving a white pickup truck with California plates.  (Id. at 4.)

Officer Brunner and others began conducting surveillance of Barnard and Glarner in March 2005.  In and around March 23, officers corroborated that Defendants were associated with each other.  (Id.)  Additionally, officers corroborated that Barnard was driving a white pickup truck with California plates that matched the license plate number provided by a CS.  (Id. at 4-5.)  Officers also observed Defendants come and go from Glarner's home, and go to some storage lockers together.  (Id. at 5.)  After Defendants left the storage lockers, a certified narcotics detection canine was taken to the lockers and positively indicated the presence of narcotics there.  (Id. at 5-6.)

On March 23, as also described in Officer Plankers's affidavit discussed in section II.A., supra, Office Brunner utilized a CI wearing a body wire to make a controlled purchase of narcotics at Glarner's residence.  (Id. at 6.)  At the house, the CI met Barnard, who agreed to sell the CI one ounce of meth.  (Id. at 6-7.)  When the CI indicated that s/he wanted to purchase more, Barnard said to wait for Glarner to return home.  (Id. at 7.)  Upon Glarner's return, the CI purchased two ounces of methamphetamine.  (Id.)  Officers then obtained a search warrant for the address and Glarner's person.

Officer Brunner testified that during execution of the warrant, Defendant Barnard was handcuffed and detained. (Hrg. Tr. at 8.) Further, the officer stated that a different, non-testifying officer "obtained consent" from Barnard before his person was searched. (Id. at 8-9.) Officer Brunner stated that he was not present when Barnard allegedly consented to be searched, and does not know anything about the circumstances under which consent was reportedly obtained. (Id. at 26-27.) In addition to a narcotic pill and cash, officers found in Barnard's pockets keys for a white pickup truck with California plates parked on the property. (Id. at 9.) A search of the vehicle later produced approximately one ounce of methamphetamine and packaging consistent with drug trafficking. (Id.)

Rather than arguing that Barnard consented to the search of his person, the Government contends that officers had probable cause to arrest Barnard without a warrant, such that the search was permissible as incident to an arrest. Officers may make a warrantless, felony arrest if they have probable cause. United States v. Oakley, 153 F.3d 696, 697 (8th Cir. 1998) (citations omitted). Probable cause exists at the time of arrest where, under the totality of the circumstances, a person of reasonable caution would believe there is a substantial chance that an offense had been committed by the person to be arrested. Gates, 462 U.S. at 230-39, 244; Dunaway v. New York,

442 U.S. 200, 208 n.9 (1979) (collecting cases).  Courts should give due weight to the inferences police officers could draw from their experience, United States v. Wilson, 964 F.2d 807, 809 (8th Cir. 1992), and probable cause is determined by judging the collective knowledge of the officers, rather than what any single officer knew at the time of arrest, United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).  Upon arresting an individual, an officer may search the individual's person incident to that arrest, and may reach into his pockets.  Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Pratt, 355 F.3d 1119, 1121-22 (8th Cir. 2004).

In the present case, at the time that Barnard was handcuffed and detained inside the home, officers were aware of information from two CSs that claimed Barnard would bring a large quantity of methamphetamine from California to the Twin Cities and would drive a white pickup truck with particular California plates.  While that information is arguably stale, as the Government failed to pinpoint when it was received, Officer Brunner's testimony also contains timely probable cause information.  On the day that the warrant was executed, Barnard was overheard via body wire offering to sell methamphetamine to the CI.  Additionally, the substance then sold that day to the CI by Glarner, pursuant to Barnard's offer, field-tested positive for methamphetamine.

The Court finds that under the totality of the circumstances known to the officers at the time of arrest, there was probable cause to arrest Defendant Barnard on narcotics conspiracy charges.  See Gates, 462 U.S. at 230-39.  Hence, the search of Defendant Barnard, including his pockets, was permissible incident to his arrest regardless of whether he voluntarily consented to the search.  See Pratt, 355 F.3d at 1121-22.  The Court recommends that Barnard's Motions to Suppress the evidence seized from his person be denied.

**D.    Search of the White Pickup Truck**

Defendant Barnard additionally claims that, as the white pickup truck was not included in the scope of the search warrant, the search of it was illegal.  Apart from challenging Barnard's standing, the Government asserts that officers had probable cause to search the truck after a certified narcotics detection canine positively alerted on the vehicle.

Under the automobile exception to the warrant requirement, the police may conduct a warrantless search of a motor vehicle if, prior to the search, they had probable cause to believe that the vehicle contained contraband or other evidence of a crime.  Wells, 347 F.3d at 287 (citing United States v. Riedesel, 987 F.2d 1383, 1389 (8th Cir. 1993) and Carroll v. United States, 267 U.S. 132, 158-59 (1925)).  A well- trained narcotics detection

canine's sniff of a lawfully stopped vehicle is not itself a search. <u>Illinois v. Caballes</u>, 125 S. Ct. 834, 838 (2005) (citations omitted). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000) (per curium) (citing <u>Gates</u>, 462 U.S. at 238). If probable cause justifies the search of a vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." <u>Id.</u> (citation omitted).

    Deputy Anderson testified at the hearing regarding the canine sniff of the white pickup truck parked at Defendant Glarner's residence on March 23, 2005. The officer testified that his dog is certified by the United States Police Canine Association, and expressed his opinion that the dog is "extremely accurate" at finding narcotics. (Hrg. Tr. at 51-52, 58.) Deputy Anderson walked his dog around the white pickup truck parked on the property of Glarner's residence, while teams were executing the warrant. (<u>Id.</u> at 53.) When the canine approached the passenger side door of the truck, he "went into an immediate alert," signaling the presence of narcotics inside the vehicle. (<u>Id.</u>)

The Court finds that the totality of the circumstances, including the prior CS information regarding the white pickup truck with California plates corroborated by the positive alert by the certified narcotics detection canine, created a fair probability that contraband would be found inside the truck.  See Fladten, 230 F.3d at 1085.  Hence, the search of every part of the vehicle and its contents that could conceal narcotics was justified.  See id.  The Court recommends that the police did not violate Defendant Barnard's Fourth Amendment rights by searching the truck.[3]  Defendant Barnard's Motions to Suppress should be denied in this respect.

In sum, the Court recommends that there are no grounds on which evidence related to either Defendant Glarner or Barnard should be suppressed, and their Motions to Suppress should be denied.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1)   Defendant Barnard's Motion to Suppress Tangible Evidence and Statements of Defendant Obtained as a Result of Any Illegal Searches and

---

[3] The Court assumes arguendo that Defendant Barnard has standing to assert a right of privacy in the vehicle, as no evidence regarding ownership or use of the vehicle was offered at the hearing other than information from the CS that Barnard would be driving such a vehicle.

Seizures (Doc. Nos. 25 and 36) should be **DENIED IN PART** as to tangible evidence, and **DENIED AS MOOT IN PART** as to statements of Defendant;

  (2) Defendant Glarner's Motion to Suppress Evidence (Doc. No. 37) should be **DENIED**; and

  (3) Defendant Barnard's Second Motion to Suppress Evidence (Doc. No. 40) should be **DENIED**.


Dated: July 7, 2005

        s/ Jonathan Lebedoff
        JONATHAN LEBEDOFF
        Chief United States Magistrate Judge


Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by July 22, 2005, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.